UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

SUN STATE FORD, INC., a Florida
corporation,

     Plaintiff,

vs.                    Case No.: _____

FORD MOTOR COMPANY, a
Delaware corporation,

     Defendant.

_____ /

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, Sun State Ford, Inc., a Florida corporation ("Plaintiff" or "Sun State"), hereby sues Defendant, Ford Motor Company, a Delaware corporation ("Defendant" or "FMC"), and alleges as follows:

### Parties, Jurisdiction, and Venue

1.    Plaintiff is a Florida corporation with its principal place of business located in Orange County, Florida.  Thus, Plaintiff is a citizen of Florida.

2.    FMC is a Delaware corporation with its principal place of business located in Michigan.  Thus, FMC is a citizen of Delaware and Michigan.

3.    FMC engages in substantial and not isolated activity in the State of Florida and is subject to the jurisdiction of this Court.

4.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000.00, exclusive of interest, costs, and attorneys' fees.

5.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to the claims asserted in this action occurred in the Middle District of Florida.

6.     This action is properly filed in the Orlando Division because it is the division to which the action is most directly connected and in which the action is most conveniently advanced.

7.     Plaintiff has retained the law firm of Latham, Luna, Eden & Beaudine, LLP to represent it in this action and is obligated to pay the firm a reasonable fee in connection therewith.

8.     All conditions precedent to the filing and maintenance of this action have been performed, waived, or otherwise excused.

## General Allegations

9.     FMC manufacturers and distributes Ford brand motor vehicles through its network of franchised dealers throughout the United States, including Plaintiff.  FMC is the sole manufacturer of Ford motor vehicles in the United States and the only source of new Ford motor vehicles for dealers such as Plaintiff.

10.    FMC is a "manufacturer" as defined in Section 320.60(9), *Florida Statutes*, and a "licensee" as defined in Section 320.60(8), *Florida Statutes*.

11.    Plaintiff owns and operates a Ford dealership known as Sun State Ford located at 3535 W. Colonial Drive, Orlando, FL 32808 (the "Dealership Location").

12.    Plaintiff is a franchised new "motor vehicle dealer" as defined in Section 320.60(11)(a), *Florida Statutes*, for the Ford line-make.

13.    Plaintiff and FMC are parties to a Ford Sales & Service Agreement (the "Dealer Agreement").  A copy of the Dealer Agreement is attached as **Exhibit "A"** and incorporated herein by reference.

14.    The Dealer Agreement is an "agreement" or "franchise agreement" as defined in Section 320.60(1), *Florida Statutes*.

## The FMC Agreement Regarding Heintzelman Ford

15.    In 1936, Bob Heintzelman ("Heintzelman") opened a Ford dealership on Livingston Street in downtown Orlando, Florida ("Heintzelman Ford"), which was the oldest and sole Ford dealership in Orlando for many decades.

16.    In 1971, Heintzelman moved Heintzelman Ford to a new location on West Colonial Drive in Orlando and built the Dealership Location that Plaintiff now operates.

17.    Heintzelman moved the heavy-duty truck business, Heintzelman's Truck Center ("Heintzelman Truck"), to the corner of John Young Parkway and Silver Star Road in Orlando.

18.    In 1974, Heintzelman sold Heintzelman Ford to W. R. Kribs and John S. Kribs, and the dealership became known as Kribs Ford (and later Sun State Ford).

19.    In 1987, Heintzelman sold Heintzelman Trucks to John Drakesmith ("Drakesmith").

20.    In or about 2011, Drakesmith sold Heintzelman Trucks to Rush Truck Centers, which continues to own the business today and operates under the name Rush Truck Center ("Rush").

21.    In the late 1980's, FMC approached Plaintiff (then owned by Kudlip Ohri and Resham Lally) to discuss the possibility of allowing Heintzelman Trucks to sell Ford medium- and light-duty trucks and passenger cars solely to its heavy-duty truck and fleet customers.

22.    Plaintiff agreed that Heintzelman Trucks could make such sales based on FMC's representation that the sales merely would be incidental sales to Heintzelman Trucks' heavy-duty truck and fleet customers and that Heintzelman Trucks would not be a competing Ford dealer, as Heintzelman Trucks was located less than three (3) miles from Sun State Ford.

23.     From that time until 2020, Plaintiff believed FMC was complying with its agreement and had no reason to believe otherwise.

24.     However, in 2020, Plaintiff first learned, through one of its customers, that FMC, in violation of its prior representations, was directing customers to Rush.

25.     In particular, Plaintiff learned that when orders are made by customers directly to FMC without designating a dealer to complete the sale, orders were now being directed to Rush instead of Plaintiff.

26.     FMC did not provide Plaintiff with notice of the establishment of a new dealer point for Rush or notice of a modification of Rush's existing dealer point to allow competing sales of Ford medium- and light-duty trucks and/or passenger cars less than three (3) miles from Sun State Ford.

### The Modification of Plaintiff's Dealer's Locality

27.     FMC notified Plaintiff of potential modifications to the Dealer Agreement (the "modification") via letter dated April 28, 2022, sent by certified mail, which Plaintiff received on May 12, 2022 (the "Modification Notice").  A copy of the Modification Notice is attached as **Exhibit "B"** and incorporated herein by reference.

28.     The modification alters the provisions of the Dealer Agreement relating to Plaintiff's Dealer's Locality, including, but not limited to,

5

modification of sections 1.(j), 1.(n), 1.(q), 2.(a), 2.(c), 2.(d), 3.(a), 6.(c), 6.(h), and 9.(a) of the Dealer Agreement.

29. "Dealer's Locality" is defined in the Dealer Agreement by specific reference to "the locality designated in writing to the Dealer by" FMC. Dealer Agreement at § 1.(j).

30. The defined term "Dealer's Locality" is utilized throughout, and is an essential part of, the Dealer Agreement.

31. Among other things, the modification removes a portion of Plaintiff's existing Dealer's Locality from which Plaintiff historically has generated a substantial portion of its sales.

32. FMC has assigned the removed portion of Plaintiff's existing Dealer's Locality to Rush, who did not have an assigned Dealer's Locality for Ford medium- and light-duty trucks prior to the modification.

33. In other words, FMC has removed one of the most profitable portions of Plaintiff's Dealer's Locality in order to create a new Dealer's Locality for Rush despite failing to notice the establishment or modification of a dealer point that allows competing sales of Ford medium- and light-duty trucks and/or passenger cars less than three (3) miles from Sun State Ford.

34. Pursuant to the "Amendment" section of the Dealer Agreement, FMC has "the right to amend, modify or change this agreement in case of legislation, government regulation or changes in circumstances beyond the

control of [FMC] that might affect materially the relationship between [FMC] and the Dealer." Dealer Agreement at § 31.

35.   FMC's attempt to modify the Dealer Agreement is not due to "legislation, government regulation or changes in circumstances beyond" FMC's control.

### The Ford EV Program

36.   As a franchised Ford dealer, Plaintiff is entitled to purchase from FMC all models manufactured and distributed by FMC for the Ford line-make.

37.   When FMC first introduced fully electric vehicles ("EVs") in Florida it required Plaintiff to execute a Next Gen Agreement that obligated Plaintiff to make certain purchases and commitments related to the sale of EVs in order for Plaintiff to receive an allocation of Ford EVs for retail sale (including the F-150 Lightening, the Mustang Mach-e, and the e-Transit Van). Pursuant to the existing Dealer Agreement (including the Next Gen Agreement), Plaintiff has been able to purchase from FMC, and sell and service, all models of Ford motor vehicles, whether internal combustion engine ("ICE") vehicles, hybrid gasoline-electric vehicles, or EVs.

38.   In September 2022, FMC announced it would be implementing the Model e Program (the "Ford EV Program") and that enrollment in the program would be required for Ford dealers to continue to sell existing and new Ford

EV products after 2023.  Starting in 2024, only Model e dealers will be able to sell Ford EVs.

39.    Under the Ford EV Program, dealers must choose one of three options: (1) enroll in the program as a Model e "Certified Elite" dealer; (2) enroll in the program as a Model e "Certified" dealer; or (3) "opt" out of the program entirely (either expressly or by not enrolling in the program).

40.    "Model e Certified Elite" dealers will be able to advertise and sell Model e vehicles at retail, although the number of vehicles that will be allocated to each dealer is unclear and uncertain, with stock inventory limited by FMC.  Model e Certified Elite dealers will be able to service Ford EVs.

41.    "Model e Certified" dealers will be able to service Ford EVs but will be limited to selling EVs to what FMC considers long-term customers of the dealer (customers that have purchased at least two new vehicles from the dealer in the last seven years) or existing dealer employees.  Model e Certified dealers will have no stock inventory to offer, will have no demonstrator vehicles, and will not be permitted to publicly advertise to customers on FMC's website.

42.    Dealers who do not enroll in the Ford EV Program will receive no allocation of, and will be unable to sell or service, Model e vehicles entirely until at least 2027.  In fact, dealers who do not enroll in the program also will

lose the ability to sell Ford EVs that they currently may sell, such as the Ford F-150 Lightning, after 2023.

43.    FMC required dealers to enroll in the Ford EV Program by December 2, 2022, or miss out on EV sales for the next four (4) years.  To avoid losing the opportunity to make EV sales, Plaintiff elected to participate in the Ford EV Program at the Certified Elite level while reserving its right to challenge any element or requirement of the program that violates applicable law, including Chapter 320, *Florida Statutes*.

44.    The Ford EV Program requires Plaintiff to accept terms and conditions that substantially modify its sales and service obligations and capital requirements under the existing Dealer Agreement.  Among other things, the Ford EV Program requires Plaintiff to commit to significant capital expenditures on charging and other technology at Plaintiff's dealership, including the installation of a substantial number of NEMA 14-50 charging ports, several "Level 2" 80Amp/19.2kw chargers, and several very expensive 120kw "Level 3" fast chargers, regardless of how many Model e vehicles Plaintiff is expected to receive from FMC or sell to consumers.

45.    FMC requires every "Certified Elite" dealer to have installed by January 1, 2024, seven (7) NEMA charging ports; five (5) Level 2 chargers; and two (2) Level 3 chargers, whether the dealer is expected to sell five or 500 Model e vehicles in the next four (4) years.  The installation of so many chargers also

9

will require a substantial and expensive electrical upgrade.  In addition, FMC is requiring Model e dealers to install several more chargers by 2026.  For example, as a Ford Certified Elite dealer, Plaintiff will need a total of fourteen (14) NEMA ports; six (6) Level 2 chargers; and three (3) Level 3 chargers by 2026.

46.    The estimated costs of complying with the program's requirements are exorbitant.  FMC estimates that all Model e Certified Elite dealers will have to spend approximately $1,200,000.00 on technology and tools by 2026 to comply with the Ford EV Program.  The majority of this investment relates to the high-powered Level 3 chargers that Model e dealers are required to install. FMC estimates that the three (3) Level 3 chargers required of Certified Elite dealers by 2026 collectively will cost $900,000.00.

47.    FMC's required capital expenditures are unreasonable.  Premium Level 3 chargers are unnecessary to sell and service EVs, and three such chargers—as is required to be a Certified Elite dealer—is excessive, even for high-volume dealers.

48.    Plaintiff already has chargers installed at Sun State Ford, which are adequate to address charging needs as Ford EV sales progress over the next several years.  Moreover, charger technology is changing rapidly.  By requiring Plaintiff to install more chargers than are necessary over the next

year, the Ford EV Program puts Plaintiff at risk that the technology it installs will be obsolete long before the investment is recouped.

49.    The primary reason FMC is requiring both Certified Elite and Certified Model e dealers to install Level 3 chargers has nothing to do with the sale or servicing of Ford EVs.  Instead, FMC is using the Ford EV Program to build out its own charging infrastructure (the "Blue Oval Charging Network") in the state of Florida at the cost of Florida Ford dealers such as Plaintiff.

50.    Rather than incurring the cost to establish its Blue Oval Charging Network, FMC is pushing that cost onto its dealers by requiring them to install expensive Level 3 chargers and make them available to the public.  These high-speed charges must be made available to any person with an electric vehicle regardless of whether it is a Ford electric vehicle.

51.    FMC requires that Plaintiff, at its own cost, ensure there is adequate lighting and security for these high-powered charging stations to be safely used by the general public at all times, even overnight or when the dealership is closed.  This raises a host of safety and liability concerns for Plaintiff, who cannot monitor these charging stations during these times.

52.    By requiring dealers such as Plaintiff to bear the cost of the Blue Oval Charging Network, FMC impermissibly is shifting costs from itself to its dealers.  The cost to install the chargers does not include electric bills and

ongoing maintenance and security that Plaintiff will be required to provide so it can have chargers available to the general public.

53.    The charger requirements FMC imposes in the EV Program go well beyond what is needed to charge the limited number of demonstrators and service vehicles at a dealership at any one time.  Rather, the Ford EV Program requires that dealers make Level 3 chargers available to the general public in order to build its own Blue Oval Charging Network and at the expense of the dealers such as Plaintiff.

54.    Besides requiring Plaintiff to spend significant and unreasonable sums in infrastructure to become Model e Certified or Model e Certified Elite, FMC also sets requirements regarding sales practices Plaintiff must follow.

55.    The Ford EV Program requires that every EV be sold utilizing FMC's Ford.com E-Commerce platform ("E-Commerce Platform").  Every EV must be ordered by a customer through the E-Commerce Platform with FMC taking a reservation from the customer and assigning a dealer to deliver the vehicle (either based on a customer's stated preference, or if no preference is stated, the proximity of the dealer to the customer).  Additionally, for every EV sold a dealer must submit to FMC a Digital Closing Statement identifying all of the financial arrangements of the sale.

56.    The Ford EV Program also requires that Plaintiff use "Guest XP" for all customer appointments.  Guest XP is a FMC digital platform that allows

customers to request service appointments, a loaner vehicle, or remote or in-service consultation.

57.    Plaintiff must use Guest XP, and pay a monthly fee for the service, even if there are competing products that offer the same or similar services that Plaintiff would prefer to use.  Prior to the Ford EV Program, Plaintiff was permitted to use the service reservation system of its choice as part of its franchised sales and service operations.

58.    The Ford EV Program also requires Plaintiff to post non-negotiable prices (within the price standard set by FMC) for the Ford EVs on Plaintiff's website (the "Posted Price Component").  By forcing Plaintiff to set prices that can never be negotiated, FMC is depriving Plaintiff of autonomy and restricting its ability to attract and retain customers on a transaction-by-transaction basis.  This also puts Plaintiff at a disadvantage over other EV brands that allow dealers autonomy and flexibility on pricing.

59.    Plaintiff also must participate in FMC's Model e Allowable Advertised Price component (the "MAAP Component") of the Ford EV Program.  Under the MAAP Component, Plaintiff may not advertise or promote EVs at a price that is outside the allowable advertised price standards to be set by FMC.  This restriction limits a Plaintiff's right to price its own inventory based on its business model, market conditions, and demand.

60. The Ford EV Program also provides a mechanism by which customers can obtain a value for their trade-in vehicles online from FMC. Plaintiff is required to honor the "trade-in" value assigned by FMC without ever seeing the vehicle and regardless of whether Plaintiff would have offered the same amount for the trade-in (the "Trade-In Component"). The Trade-In Component prevents Plaintiff from assessing the fair value of a trade-in and using that value to set a fair price for the sale of the new vehicle. In turn, Plaintiff also is deprived of a fair opportunity to acquire inventory for a profitable used car business.

61. Prior to the Ford EV Program, Plaintiff was permitted to post a proposed price and negotiate the final price of new and used vehicles sold under its Ford franchise.

62. Taken together, the Posted Price Component, the MAAP Component, and the Trade-In Component allow FMC to control the prices at which Ford EVs are sold. By controlling the price set, eliminating Plaintiff's ability to negotiate with customers, and dictating amounts Plaintiff may pay for customer trade-ins, FMC seeks to take complete control of the transactions and turn Plaintiff into a mere agent of FMC. FMC seeks to eliminate Plaintiff's autonomy and eliminate competition among Florida Ford dealers to the detriment of EV customers and dealers such as Plaintiff and to the benefit of FMC.

14

63.    The Ford EV Program is designed to provide dealers with limited inventory to store on dealership lots and emphasizes sales placed online. This practice discourages customers from visiting dealership locations, where they can test drive vehicles and get questions answered by live sales personnel, building customer loyalty and rapport (which is at odds with FMC's existing requirements that Plaintiff invest in costly facility requirements and sales and service image programs). It also limits the ability of Plaintiff to decide for itself how much inventory to carry to meet the needs of its business model.

64.    Prior to the Ford EV Program, Plaintiff was permitted to order new vehicles from FMC for sale to customers out of vehicle inventory maintained at Plaintiff's facilities.

65.    Plaintiff must also offer home delivery of vehicles to 100% of customers, utilize a tablet for all vehicle deliveries to a customer, and complete a digital readiness checklist with as of yet unspecified components.

66.    Prior to the Ford EV Program, Plaintiff could choose whether to offer customers home delivery of vehicles, the means by which those deliveries would take place, and what digital retail tools to use in its sales and service operation.

67.    The Ford EV Program also requires Plaintiff to offer pickup and delivery with a loaner for all Model e service events but does not reimburse Plaintiff for those costs.

68.    Prior to the Ford EV Program, Plaintiff was permitted to choose whether to offer loaner vehicles to its service customers.

69.    None of the Ford EV Programs requirements are in the Dealer Agreement.

70.    Much like the charger and training requirements discussed above, these other requirements of the Ford EV Program are unnecessary for Plaintiff to sell and service Ford EVs.  Instead, these requirements are a way for FMC to control retail transactions that have traditionally been left to dealers such as Plaintiff, fostering competition that benefits the public.

71.    FMC has no real expectation that the Ford EV Program will be profitable for many dealers once these investments are made.  As part of the rollout of the program, FMC provided dealers with *pro formas* that showed their expected sales and returns from the Ford EV Program.  These *pro formas* showed that FMC even expects some dealers to lose money once the investments are factored in.

72.    To date, FMC has not provided any justification as to why dealers who are likely to sell only a few Model e vehicles in the first few years need to make the same investment on chargers and training as dealers who are expected to sell many such vehicles in that same period.  Instead, FMC has defended the program by claiming that it is "voluntary" and that dealers are not required to sell Ford EVs vehicles if they do not want to.

73.    FMC's argument misses the point; Plaintiff does want to sell these vehicles and believes it can continue to do so profitably and in a manner that promotes competition to the benefit of consumers.   However, FMC is intentionally withholding new and potentially profitable products from dealers such as Plaintiff, to which they have an existing contractual and statutory right, on the condition that the dealers accede to the extreme, unreasonable, and anti-competitive conditions on which FMC is insisting.  To be sure, there is nothing "voluntary" about FMC's unlawful take-it-or-leave-it program.

74.    Plaintiff agrees with FMC that innovation is good for the industry, the environment, and ultimately for the Ford brand.  Its agrees with FMC that EVs should be sold through independent franchised dealers and not directly by manufacturers who cannot offer the same service and sales experiences that independent franchised dealers can offer.   However, the Ford EV Program threatens to erode the independent franchise system, not promote it.  There is no reason to believe that an independent franchise system will work any less well for EVs than it has for other Ford vehicles for over a century, without the onerous conditions that the Ford EV Program entails.

## COUNT I
## BREACH OF CONTRACT
## (Heintzelman Agreement)

75.    Plaintiff realleges and incorporates by reference the allegations set forth in paragraphs 1 through 35 above as if fully set forth herein.

76.     FMC's agreement that Heintzelman Ford would be permitted to make only incidental sales of passenger cars and light-duty trucks to its heavy-duty and fleet customers is a valid contract between Plaintiff and FMC (the "Heintzelman Agreement").

77.     Based on the allegations set forth above, FMC materially breached the Heintzelman Agreement.

78.     As a direct result of FMC's material breach of the Heintzelman Agreement, Plaintiff has suffered damages.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in favor of Plaintiff and against FMC (a) awarding Plaintiff damages, interest, and the costs of this action; and (b) granting such other and further relief as the Court deems proper.

## COUNT II
## BREACH OF CONTRACT
### (Dealer Agreement)

79.     Plaintiff realleges and incorporates by reference the allegations set forth in paragraphs 1 through 35 above as if fully set forth herein.

80.     The Dealer Agreement is a valid contract between Plaintiff and FMC.

81.     Based on the allegations set forth above, FMC materially breached the Dealer Agreement.

82.    As a direct result of FMC's material breach of the Dealer Agreement, Plaintiff has suffered damages.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in favor of Plaintiff and against FMC (a) awarding Plaintiff damages, interest, and the costs of this action; (b) entering an injunction enjoining FMC's unlawful activities; and (c) granting such other and further relief as the Court deems proper.

### COUNT III
### BREACH OF IMPLIED COVENANT OF
### GOOD FAITH AND FAIR DEALING
### (Dealer Agreement)

83.    Plaintiff realleges and incorporates by reference the allegations set forth in paragraphs 1 through 35 above as if fully set forth herein.

84.    The Dealer Agreement is a valid contract between Plaintiff and FMC.

85.    The Dealer Agreement is ambiguous about the permissibility of the scope of the Dealer Agreement with respect to the determination of Plaintiff's Dealer Locality.

86.    Pursuant to Section 9.(a) of the Dealer Agreement, FMC reserved

> the right to determine, from time to time, in its best
> judgment, the numbers, locations and sizes of
> authorized dealers necessary for proper and
> satisfactory sales and service representation for
> COMPANY PRODUCTS within and without the
> DEALER'S LOCALITY.    In making such

19

determinations, the Company from time to time conducts, to the extent deemed adequate by the Company and subject to the ready availability of information, studies of the locality, including such factors as its geographic characteristics, consumer shopping habits, competitive representation patterns, sales and service requirements, convenience of customers or potential customers and past and future growth and other trends in marketing conditions, population, income, UIO, VEHICLE sales and registrations and COMPETITIVE and INDUSTRY CAR and TRUCK registrations.

87.    FMC, through its conscious and deliberate acts, failed or refused to discharge its contractual responsibilities regarding the determination of the locations and sizes of authorized dealers in good faith, which unfairly frustrates the Dealer Agreement's purpose and Plaintiff's expectations.

88.    FMC's material breach of the Dealer Agreement deprives Plaintiff of the benefits of the Dealer Agreement.

89.    As a direct result of FMC's material breach of the Dealer Agreement, Plaintiff has suffered damages.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in favor of Plaintiff and against FMC (a) awarding Plaintiff damages; interest, and the costs of this action; and (b) granting such other and further relief as the Court deems proper.

**COUNT IV**
**VIOLATION OF SECTION 320.64(4), *FLORIDA STATUTES***

90.    Plaintiff realleges and incorporates by reference the allegations set forth in paragraphs 1 through 35 above as if fully set forth herein.

91.    Section 320.64(4), *Florida Statutes*, provides that it is unlawful for a licensee such as FMC to indulge in any illegal act relating to its business.

92.    The Florida Deceptive and Unfair Trade Practices Act, Chapter 501, *Florida Statutes* ("FDUTPA"), renders unlawful unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce.  Fla. Stat. § 501.204.

93.    At all relevant times, FMC solicited, advertised, offered, and provided goods and services by distributing its products in the State of Florida and thereby was engaged in trade or commerce as defined in Section 501.203, *Florida Statutes*.

94.    At all relevant times, Plaintiff was a consumer as defined by Section 501.203, *Florida Statutes*.

95.    FMC's practices, as described in detail in above, are unfair and deceptive and illegal under FDUTPA.

96.    Accordingly, FMC has violated Section 320.64(4), *Florida Statutes*, by violating FDUTPA.

97.    As a result of FMC's violation of Section 320.64(4), *Florida Statutes*, Plaintiff has suffered damages.

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in favor of Plaintiff and against FMC (a) awarding Plaintiff damages, interest, attorneys' fees, and the costs of this action; (b) entering an injunction enjoining FMC's unlawful activities; and (c) granting such other and further relief as the Court deems proper.

## COUNT V
## VIOLATION OF SECTION 320.64(22), *FLORIDA STATUTES*

98.    Plaintiff realleges and incorporates by reference the allegations set forth in paragraphs 1 through 14 and 36 through 74 above as if fully set forth herein.

99.    This Count is an action for declaratory relief pursuant to 28 U.S.C. §§ 2201- 2202; Rule 57, *Federal Rules of Civil Procedure*; and Chapter 86, *Florida Statutes* (Declaratory Judgments), for FMC's violation of Section 320.64(22), *Florida Statutes*.

100.    Section 320.64(22) provides that a manufacturer such as FMC violated the law if it:

> has refused to deliver, in reasonable quantities and within a reasonable time, to any duly licensed motor vehicle dealer who has an agreement with [the manufacturer] for the retail sale of new motor vehicles … sold by the [manufacturer], any such motor vehicles … as are covered by such agreement.

> Such refusal includes the failure to offer to its same line-make franchised motor vehicle dealers all models manufactured for that line-make, or requiring a dealer to pay any extra fee, require a dealer to execute a separate franchise agreement, purchase unreasonable advertising displays or other materials, or relocate, expand, improve, remodel, renovate, recondition, or alter the dealer's existing facilities, or provide exclusive facilities as a prerequisite to receiving a model or series of vehicles. … [A manufacturer] may impose reasonable requirements on the motor vehicle dealer, other than the items listed above, including, but not limited to, the purchase of special tools required to properly service a motor vehicle and the undertaking of sales person or service person training related to the motor vehicle.

101.   In short, Section 320.64(22), *Florida Statutes*, provides that Plaintiff is entitled to receive all Ford line-make vehicles, and FMC may not condition the Plaintiff's right to receive such vehicles on its agreement to change, alter, or improve its facilities; execution of a separate franchise agreement; or satisfaction of any unreasonable requirements.

102.   FMC has indicated a refusal to deliver Ford EVs to dealers who fail to enroll in and meet the requirements of the Ford EV Program.

103.   As set forth above, the Ford EV Program requires Plaintiff to alter or renovate its facilities to install chargers, including the installation of a Level 3 charger that is made available to the public at all times.

104.   Additionally, the E-Commerce Platform, Guest XP system, MAAP Component, Posted Price Component, Trade-In Component, and the

requirement of home deliveries all are unreasonable requirements imposed by FMC to allow FMC to control the sales process and for the convenience of FMC.

105.   None of these requirements are tailored to unique characteristics of Ford EVs that are necessary in order to sell and service Ford EVs.

106.   Requirements that are not necessary to sell and service Ford EVs are not reasonable requirements.

107. Accordingly, FMC has violated Section 320.64(22), *Florida Statutes*, by conditioning delivery of Ford EVs to Plaintiff on its compliance with the Ford EV Program requirements.

WHEREFORE, respectfully requests that the Court enter judgment in favor of Plaintiff and against FMC (a) pursuant to 28 U.S.C. §§ 2201-2202, Rule 57, *Federal Rules of Civil Procedure* , and Chapter 86, *Florida Statutes*, declaring that FMC's implementation of the Ford EV Program and the requirements set forth therein violate Section 320.64(22), *Florida Statutes*; (b) entering an injunction enjoining FMC's implementation of the illegal Ford EV Program requirements; (c) awarding Plaintiff damages, interest, attorneys' fees, and the costs of this action; and (d) granting such other and further relief as the Court deems proper.

<u>**COUNT VI**</u>
<u>**VIOLATION OF SECTION 320.64(19), *FLORIDA STATUTES***</u>

108.   Plaintiff realleges and incorporates by reference the allegations set forth in paragraphs 1 through 14 and 36 through 74 above as if fully set forth herein.

109.   This Count is an action for declaratory relief pursuant to 28 U.S.C. §§ 2201-2202; Rule 57, *Federal Rules of Civil Procedure*; and Chapter 86, *Florida Statutes* (Declaratory Judgments), for FMC's violation of Section 320.64(19), *Florida Statutes*.

110.   Section 320.64(19), *Florida Statutes*, provides that it is unlawful for a manufacturer such as FMC to, without good and fair cause, "delay, refuse, or fail to provide a supply of motor vehicles by series in reasonable quantities, including the models publicly advertised by the applicant or licensee as being available …."

111.   FMC has indicated a refusal to deliver Ford EVs to dealers who fail to enroll in and meet the requirements of the Ford EV Program.

112.   FMC does not have good cause to refuse to deliver or provide a reasonable quantity of Ford EVs to dealers who fail or refuse to enroll in the Ford EV Program.

113.   As set forth herein, the Ford EV Program requirements are unfair, unreasonable, anti-competitive, and illegal, and as a result, failure to meet

such requirements is not good and fair cause under Section 320.64(19), *Florida Statutes*, to refuse to deliver reasonable quantities of Ford EVs that are advertised by FMC as being available.

114. Accordingly, FMC has violated Section 320.64(19), *Florida Statutes*, by conditioning delivery of Ford EVs to Plaintiff on its compliance with the Ford EV Program requirements.

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in favor of Plaintiff and against FMC (a) pursuant to 28 U.S.C. §§ 2201-2202, Fed. R. Civ. P. 57, and Chapter 86, *Florida Statutes*, declaring that FMC's implementation of the Ford EV Program and the requirements set forth therein violate Section 320.64(19), *Florida Statutes*; (b) entering an injunction enjoining FMC's implementation of the illegal Ford EV Program requirements; (c) awarding Plaintiff damages, interest, attorneys' fees, and the costs of this action; and (d) granting such other and further relief as the Court deems proper.

## COUNT VII
## VIOLATION OF 320.64(18), *FLORIDA STATUTES*

115. Plaintiff realleges and incorporates by reference the allegations set forth in paragraphs 1 through 14 and 36 through 74 above as if fully set forth herein.

116.   This Count is an action for declaratory relief pursuant to 28 U.S.C. §§ 2201-2202; Rule 57, *Federal Rules of Civil Procedure*; and Chapter 86, *Florida Statutes* (Declaratory Judgments), for FMC's violation of Section 320.64(18), *Florida Statutes*.

117.   Section 320.64(18), *Florida Statutes*, provides that a licensee such as FMC has violated the law if it has established a system of allocation or distribution of motor vehicles that is "unfair, inequitable, unreasonably discriminatory, or not supportable by reason and good cause after considering the equities of the affected motor vehicles dealer or dealers."

118.   As set forth above, FMC has conditioned the allocation and distribution of Ford EVs to Plaintiff on its willingness and ability to meet conditions that are unfair and unreasonable and that have no bearing on Plaintiff's ability to sell and service Ford EVs.

119.   As set forth above, the Ford EV Program facility components require Plaintiff to alter or renovate its facilities to install chargers, including the installation of a Level 3 charger that is made available to the public at all times.

120.   Additionally, the E-Commerce Platform, Guest XP system, MAAP Component, Posted Price Component, Trade-In Component, and the requirement of home deliveries all are unreasonable requirements imposed by FMC to allow FMC to control the sales process and for the convenience of FMC.

27

121. FMC, by forcing Plaintiff to meet these unreasonable requirements or face the prospect of not receiving Ford EVs to which Plaintiff is entitled under the Dealer Agreement and applicable law, has an unfair system of distribution and allocation.

122. None of these requirements are tailored to unique characteristics of Ford EVs that are necessary in order to sell and service Ford EVs.

123. Through the Ford EV Program requirements, FMC has violated Section 320.64(18), *Florida Statutes*, by establishing or implementing a system of allocation or distribution unfair, inequitable, unreasonably discriminatory, or not supportable by reason and good cause after considering the equities of the affected motor vehicles dealer or dealers.

124. Section 320.64(18), *Florida Statutes*, further prohibits FMC from reserving a specific motor vehicle for a specific person or requiring or incentivizing a motor vehicle dealer from selling, leasing, or negotiating the sale or lease of a specific motor vehicle to a specific person.

125. Through the E-Commerce Platform, FMC accepts reservations from specific customers for specific vehicles and requires or incentivizes Plaintiff to sell, lease, or negotiate the sale or lease of the specific vehicle reserved to the specific customer, making the reservation a violation of Section 320.64(18), *Florida Statutes*.

126. Section 320.64(18), *Florida Statutes*, also prohibits FMC from requiring or incentivizing a motor vehicle dealer to sell or lease a motor vehicle at a specific price or profit margin or to restrict the price at which a motor vehicle dealer may sell or lease a motor vehicle.

127. Through its implementation of the MAAP Component, Posted Price Component, and Trade-In Component, FMC is requiring or incentivizing Plaintiff to sell or lease EVs at a specified price or profit margin and restricting the price at which Plaintiff may sell or lease EVs in violation of Section 320.64(18), *Florida Statutes*.

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in favor of Plaintiff and against FMC (a) pursuant to 28 U.S.C. §§ 2201-2202, Rule 57, *Federal Rules of Civil Procedure*; and Chapter 86, *Florida Statute*, declaring that FMC's implementation of the Ford EV Program and the requirements set forth therein violate Section 320.64(18), *Florida Statutes*; (b) entering an injunction enjoining FMC's implementation of the illegal Ford EV Program requirements; (c) awarding Plaintiff damages, interests, attorneys' fees, and the costs of this action; and (d) granting such other and further relief as the Court deems proper.

## COUNT VIII
## VIOLATION OF SECTION 320.64(23), *FLORIDA STATUTES*

128.   Plaintiff realleges and incorporates by reference the allegations set forth in paragraphs 1 through 14 and 36 through 74 above as if fully set forth herein.

129.   This Count is an action for declaratory relief pursuant to 28 U.S.C. §§ 2201-2202; Rule 57, *Federal Rules of Civil Procedure*; and Chapter 86, *Florida Statutes* (Declaratory Judgments), for FMC's violation of Section 320.64(23), *Florida Statutes*.

130.   Section 320.64(23), *Florida Statutes*, prohibits a manufacturer from engaging in any activities described in Section 320.60(16), *Florida Statutes*.

131.   Among other things, Section 320.60(16), *Florida Statutes*, describes the following activities: (a) accepting a reservation from a retail consumer for a specific motor vehicle; (b) setting the retail price for the purchase, lease, or other use of a motor vehicle; and (c) offering a retail consumer a value for a motor vehicle being traded as part of the purchase, lease, or other use of a motor vehicle.

132.   Through the E-Commerce Platform, FMC accepts reservations from specific customers for specific motor vehicles in violation of Section 320.64(23), *Florida Statutes*.

133. Through its implementation of the MAAP Component, Posted Price Component, and Trade-In Component, FMC sets the retail price at which Plaintiff may sell or lease EVs in violation of Section 320.64(23), *Florida Statutes*.

134. Through the Trade-In Component, FMC offers retail consumers a value for motor vehicles being traded as part of a purchase or lease of vehicle and requires that Plaintiff honor that value in violation of Section 320.64(23), *Florida Statutes*.

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in favor of Plaintiff and against FMC (a) pursuant to 28 U.S.C. §§ 2201-2202, Rule 57, *Federal Rules of Civil Procedure*, and Chapter 86, *Florida Statutes*, declaring that FMC's implementation of the Ford EV Program and the requirements set forth therein constitute a modification of the Dealer Agreement that is unfair and prohibited in violation Section 320.64(23), *Florida Statutes*; (b) entering an injunction enjoining FMC's implementation of the illegal Ford EV Program requirements; (c) awarding Plaintiff damages, interest, attorneys' fees, and the costs of this action; and (d) granting such other and further relief as the Court deems proper.

## COUNT IX
## VIOLATION OF SECTION 320.641, *FLORIDA STATUTES*

135.   Plaintiff realleges and incorporates by reference the allegations set forth in paragraphs 1 through 14 and 36 through 74 above as if fully set forth herein.

136.   This Count is an action for declaratory relief pursuant to 28 U.S.C. §§ 2201-2202; Rule 57, *Federal Rules of Civil Procedure*; and Chapter 86, *Florida Statutes* (Declaratory Judgments), for FMC's violation of Section 320.641, *Florida Statutes*.

137.   Section 320.641, *Florida Statutes*, provides that a manufacturer may not modify a franchise agreement in a manner that will adversely alter the rights or obligations of a motor vehicle dealer or will substantially impair the sales, service obligations, or investment of the motor vehicle dealer without providing the statutorily specified notice to the affected dealer and the Florida Department of Highway Safety and Motor Vehicles.

138.   Pursuant to Section 320.641(3), *Florida Statutes*, a dealer receiving the notice specified and mandated by Section 320.641(1), *Florida Statutes*, may file a petition or complaint for determination of whether such action is an unfair or prohibited modification. "A modification … is unfair if it is not clearly permitted by the franchise agreement, is not undertaken in good

faith, or is not undertaken for good cause.  The manufacturer has the burden of proof that such action is fair and not prohibited."

139.  Currently, under the existing Dealer Agreement (including the Next Gen Agreement), Plaintiff is authorized to sell and service all models of Ford line-make motor vehicles under the conditions set forth in the Dealer Agreement as modified by the Dealer Protection Act.

140.  By way of the Ford EV Program requirements, FMC seeks to modify the existing Dealer Agreement to impose additional requirements as a pre-requisite to Plaintiff's ability to receive all models of the Ford line-make. Specifically, FMC intends to prevent Plaintiff from selling or servicing Ford EVs (which it currently sells and services) unless Plaintiff meets the Ford EV Program requirements.

141.  As set forth herein, the modifications to the Dealer Agreement (including the Next Gen Agreement) by way of the Ford EV Program requirements are not undertaken in good faith or for good cause.  Additionally, no provision of the current Dealer Agreement "clearly permit[s]" FMC to implement the modifications planned by way of the Ford EV Program requirements.

142.  Finally, FMC has failed to notice its intended modifications to the Dealer Agreement in the manner specified by Section 320.641(1), *Florida Statutes*.

143.   Accordingly, FMC is in violation of Section 320.641, *Florida Statutes*, and its effort to effectively modify the Dealer Agreement must be rejected.

WHEREFORE, Sun State respectfully requests that the Court enter judgment in favor of Plaintiff and against FMC (a) pursuant to 28 U.S.C. §§ 2201-2202, Rule 57, *Federal Rules of Civil Procedure*, and Chapter 86, *Florida Statutes*, declaring that FMC's implementation of the Ford EV Program and the requirements set forth therein constitute a modification of the Dealer Agreement that is unfair and prohibited in violation Section 320.641, *Florida Statutes*; (b) entering an injunction enjoining FMC's implementation of the illegal Ford EV Program requirements; (c) awarding Plaintiff damages, interests, attorneys' fees, and the costs of this action; and (d) granting such other and further relief as the Court deems proper.

## COUNT X
## VIOLATION OF SECTION 320.64(10)(B), *FLORIDA STATUTES*

144.   Plaintiff realleges and incorporates by reference the allegations set forth in paragraphs 1 through 14 and 36 through 74 above as if fully set forth herein.

145.   This Count is an action for declaratory relief pursuant to 28 U.S.C. §§ 2201-2202; Rule 57, *Federal Rules of Civil Procedure*; and Chapter 86,

*Florida Statutes* (Declaratory Judgments), for FMC's violation of Section 320.64(10)(b), *Florida Statutes*.

146. Section 320.64(10)(b), *Florida Statutes*, provides that a manufacturer may not require a motor vehicle dealer, by agreement, program, policy, standard, or otherwise, to make substantial changes, alterations, or remodeling to, or to replace a motor vehicle dealer's sales or service facilities unless the manufacturer's requirements are reasonable and justifiable in light of the current and reasonably foreseeable projections of economic conditions, financial expectations, and the motor vehicle dealer's market for the manufacturer's motor vehicles.

147. As set forth herein, FMC, through the Ford EV Program, has required Plaintiff to alter its facilities or face the elimination of its opportunity to sell and service Ford EVs, which are a significant part of Plaintiff's current business and are projected to continue to grow in significance.

148. While FMC claims the Ford EV Program is voluntary, offering Plaintiff the choice between meeting the program requirements or having a significant portion of its business eliminated by FMC cannot be considered to be offering a voluntary program.

149. To be sure, FMC is requiring Plaintiff to alter its facilities as part of the Ford EV Program through the installation of expensive chargers so that

FMC can build its Blue Oval Charging Network at the expense of dealers such as Plaintiff.

150.   Such modifications are not reasonable and justifiable in light of the current and reasonably foreseeable projections of economic conditions, financial expectations, and the market for Ford motor vehicles generally and Ford EVs specifically.  Indeed, the *pro forma* projections provided by FMC show that the requirements are not reasonable or justifiable.

151.  Accordingly, FMC has violated Section 320.64(10)(b), *Florida Statutes*, by unreasonably and unjustifiably requiring Plaintiff to alter its existing facilities in order to be able to sell and service Ford EVs.

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in favor of Plaintiff and against FMC (a) pursuant to 28 U.S.C. §§ 2201-2202, Rule 57, *Federal Rules of Civil Procedure*, and Chapter 86, *Florida Statutes*, declaring that FMC's implementation of the Ford EV Program and the requirements set forth therein violate Section 320.64(10)(b), *Florida Statutes*; (b) entering an injunction enjoining FMC's implementation of the illegal Ford EV Program requirements; (b) awarding Plaintiff damages, interest, attorneys' fees, and the costs of this action; and (c) granting such other and further relief as the Court deems proper.

## COUNT XII
## VIOLATION OF SECTION 320.64(28), *FLORIDA STATUTES*

152.    Plaintiff realleges and incorporates by reference the allegations set forth in paragraphs 1 through 14 and 36 through 74 above as if fully set forth herein.

153.    This Count is an action for declaratory relief pursuant to 28 U.S.C. §§ 2201-2202; Rule 57, *Federal Rules of Civil Procedure*; and Chapter 86, *Florida Statutes* (Declaratory Judgments), for FMC's violation of Section 320.64(28), *Florida Statutes*.

154.    Section 320.64(28), *Florida Statutes*, prohibits a manufacturer from "publish[ing], disclos[ing], or otherwise ma[king] available in any form information provided by a motor vehicle dealer with respect to sales prices of motor vehicles or profit per motor vehicle sold."

155.    By way of the Posted-Pricing Component, FMC requires Plaintiff to post its non-negotiable Ford EV pricing online, thus causing the sales price of Plaintiff's Ford EV sales to be published, disclosed, or otherwise made available.

156.    Accordingly, FMC has violated Section 320.64(28), *Florida Statutes*.

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in favor of Plaintiff and against FMC (a) pursuant to 28 U.S.C. §§

2201-2202, Rule 57, *Federal Rules of Civil Procedure* , and Chapter 86, *Florida Statutes*, declaring that FMC's implementation of the Ford EV Program and the requirements set forth therein violate Section 320.64(28), *Florida Statutes*; (b) entering an injunction enjoining FMC's implementation of the illegal Ford EV Program requirements; (c) awarding Plaintiff damages, interest, attorneys' fees, and the costs of this action; and (d) granting such other and further relief as the Court deems proper.

## COUNT XII
## VIOLATION OF SECTION 320.64(29), *FLORIDA STATUTES*

157.    Plaintiff realleges and incorporates by reference the allegations set forth in paragraphs 1 through 14 and 36 through 74 above as if fully set forth herein.

158.    This Count is an action for declaratory relief pursuant to 28 U.S.C. §§ 2201-2202; Rule 57, *Federal Rules of Civil Procedure*; and Chapter 86, *Florida Statutes* (Declaratory Judgments), for FMC's violation of Section 320.64(29), *Florida Statutes*.

159.    Section 320.64(29), *Florida Statutes*, requires that a manufacturer "reimburse a motor vehicle dealer in full for the reasonable cost of providing a loaner vehicle to any customer who is having a vehicle serviced at the motor vehicle dealer, if a loaner is required by the [manufacturer], or a loaner is

expressly part of [a manufacturer's] customer satisfaction computation or index."

160.   As set forth above, FMC, through the Ford EV Program, requires Plaintiff to offer pickup and delivery with a loaner for all Model e service events, but does not reimburse Plaintiff for those costs.

161.   Requiring a loaner without reimbursing Plaintiff for the cost of providing such loaners is a violation of Section 320.64(29), *Florida Statutes*.

162.   Accordingly, FMC has violated Section 320.64(29), *Florida Statutes*.

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in favor of Plaintiff and against FMC (a) pursuant to U.S.C. §§ 2201-2202, Rule 57, *Federal Rules of Civil Procedure*, and Chapter 86, *Florida Statutes*, declaring that FMC's implementation of the Ford EV Program and the requirements set forth therein violate Section 320.64(29), *Florida Statutes*; (b) entering an injunction enjoining FMC's implementation of the illegal Ford EV Program requirements; (c) awarding Plaintiff damages, interest, attorneys' fees, and the costs of this action; and (d) granting such other and further relief as the Court deems proper.

## <u>DEMAND FOR JURY TRIAL</u>

Plaintiff demands a jury trial on all issues so triable.

Dated: September 8, 2023.

/s/ *Jennifer S. Eden*
**Jennifer S. Eden, Esq.**
LEAD ATTORNEY
Florida Bar No. 0867594
jeden@lathamluna.com
**Christina Y. Taylor, Esq.**
Florida Bar No. 0057616
ctaylor@lathamluna.com
LATHAM, LUNA, EDEN & BEAUDINE, LLP
201 S. Orange Avenue, Suite 1400
Orlando, FL 32801
Telephone: (407) 481-5800
Facsimile: (407) 481-5801

*Attorneys for Plaintiff*