**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION**

**SUN STATE FORD, INC.,**

        **Plaintiff,**

v.                                    Case No: 6:23-cv-1728-PGB-LHP

**FORD MOTOR COMPANY,**

        **Defendant.**
_____/

## ORDER

This cause comes before the Court upon Defendant Ford Motor Company's ("**Defendant**") Amended Motion for Partial Summary Judgment. (Doc. 33 (the "**Motion**")). Considering the Motion concerns Defendant's request that the Court grant it partial summary judgment on mootness grounds, the Court treats the Motion as a motion to dismiss for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1).[1] Plaintiff Sun State Ford, Inc. ("**Plaintiff**") filed a response in opposition (Doc. 35 (the "**Response**")), and Defendant filed a reply

---

[1] *E.g.*, *Sheely v. MRI Radiology Network, P.A.*, 505 F.3d 1173, 1182 (11th Cir. 2007) ("We have repeatedly said that when a district court disposes of a case on justiciability (mootness) grounds we will treat the district court's determination as if it was ruling on a motion to dismiss for lack of subject matter jurisdiction under FED. R. CIV. P. 12(b)(1), even if the district court mistakenly has labeled its ruling a grant of summary judgment."); *Troiano v. Supervisor of Elections in Palm Beach Cty.*, 382 F.3d 1276, 1278 n.2 (11th Cir. 2004) ("The district court's finding of mootness was embodied in an order granting the defendant's motion for summary judgment. Subject matter jurisdiction is appropriately dealt with by means of a motion to dismiss under Federal Rule of Civil Procedure Rule 12(b)(1), and we will treat the district court's summary judgment ruling as if it were a ruling on a Rule 12(b)(1) motion.").

(Doc. 36 (the "**Reply**")). The parties filed a Stipulation of Agreed Material Facts. (Doc. 30). Upon consideration, the Motion is due to be denied.

I.   BACKGROUND

Plaintiff filed its Complaint in this matter on September 8, 2023. (Doc. 1 (the "**Complaint**")). Therein, Plaintiff alleges that Defendant manufactures Ford brand motor vehicles and distributes these vehicles to its franchised dealers throughout the United States for retail sale. (*See id.* ¶ 9). Plaintiff is one such franchised dealer and operates a dealership known as Sun State Ford in Orlando, Florida. (*See id.* ¶¶ 11–12).

The Complaint sets forth two general disputes between the parties. The first dispute concerns issues regarding Plaintiff's dealership locality and forms the basis of Counts I through IV (the "**dealership locality dispute**"). (*Id.* ¶¶ 15–35, 75–97). The dealership locality dispute is not at issue here. (Doc. 33, p. 2; Doc. 35, pp. 1–2). The second dispute concerns Defendant's implementation of a new program pertaining to its franchised dealers' sale of its electric vehicles (the "**EV Program**") and forms the basis of Counts V through XII (the "**EV Program dispute**"). (Doc. 1, ¶¶ 36–74, 98–162). The Motion pertains to the EV Program dispute. (Doc. 33).

Plaintiff contends that, at the time Defendant first introduced fully electric vehicles ("**EVs**") in Florida, before permitting Plaintiff to receive an allocation of its EVs for retail sale, it required that Plaintiff enter a contract containing commitments and purchase requirements regarding such sales (the "**EV**

**Contract**"). (Doc. 1, ¶ 37). Thus, after signing the EV contract, Plaintiff began selling and servicing EVs manufactured by Defendant. (*Id.*). Then, Defendant announced the new EV Program in September 2022. (*Id.* ¶ 38; Doc. 30, ¶ 1). Defendant's franchised dealers that decided to participate in the EV Program were able to choose between two levels of commitment. (Doc. 1, ¶ 39). Although Defendant's franchised dealers could "opt out" of the EV Program, doing so meant they would no longer be permitted to sell or service Defendant's EVs until at least 2027. (*Id.* ¶¶ 39, 42).

Plaintiff alleges that it enrolled in the EV program at the higher of the two offered levels of commitment so that it would not lose out on four years of EV sales. (*See id.* ¶ 43). However, Plaintiff objects to many aspects of the EV Program. (*See generally id.* ¶¶ 36–74). For example, Plaintiff avers that Defendant is using the EV Program to build out its own charging network while pushing the costs onto franchised dealers such as Plaintiff. (*Id.* ¶¶ 49–50). The EV Program does this, Plaintiff asserts, by requiring franchised dealers to make unreasonable expenditures of their own capital to install and maintain an unnecessary number of highspeed charging stations. (*Id.* ¶¶ 44–47). Moreover, the EV Program "requires that Plaintiff, at its own cost, ensure there is adequate lighting and security for these high-powered charging stations to be safely used by the general public at all times, even overnight or when the dealership is closed." (*Id.* ¶ 51). Plaintiff argues that such requirements substantially modify the terms of the existing agreements between the parties, including the EV Contract. (*Id.* ¶ 44).

Thus, despite enrolling in the EV Program, Plaintiff reserved its right to challenge the program's legality and filed the instant Complaint. (*Id.* ¶ 43). The EV Program took effect on January 1, 2024. (*Id.* ¶¶ 38, 45; Doc. 33, p. 4).

In Counts V through XII of the Complaint, Plaintiff alleges that the EV Program violates numerous provisions within Florida Statutes §§ 320.64 and 320.641. (Doc. 1, ¶¶ 98–162). Accordingly, through these counts, Plaintiff seeks declaratory relief regarding such violations and also seeks to enjoin the allegedly offending conduct.[2] (*See id.*).

In the Motion, Defendant argues that Plaintiff's claims concerning the EV Program have become moot, since the parties stipulate that "[o]n June 13, 2024, Ford announced its voluntary discontinuation of the Model e Electric Vehicle Program, effective July 1, 2024." (Doc. 30, ¶ 3; Doc. 33). Plaintiff responds that Defendant's voluntary cessation of the challenged conduct does not moot its EV Program claims. (Doc. 35).

## II.    LEGAL STANDARD

### A.    Federal Rule of Civil Procedure 12(b)(1)

Rule 12(b)(1) attacks on subject matter jurisdiction may be facial or factual. *Carmichael v. Kellogg, Brown & Root Servs., Inc.*, 572 F.3d 1271, 1279 (11th Cir.

---

[2]  The Court notes that, in the "WHEREFORE" clauses that follow each of the EV Program counts, Plaintiff additionally states that it seeks "damages, interest, attorneys' fees, and costs" under these counts. (*E.g.*, Doc. 1, p. 24). Further, in the Motion, Defendant argues that the EV Program counts have been rendered moot only by reference to their requests for declaratory and injunctive relief. (*See* Doc. 33). In any event, because the Court concludes that Plaintiff's requests for declaratory and injunctive relief are not moot, the Court need not consider whether the aforementioned requests for damages save the EV Program counts from a finding of such mootness.

4

2009). For facial attacks, courts look to the face of the complaint, taking all allegations as true, and determine whether the plaintiff has sufficiently alleged the Court's subject matter jurisdiction. *Stalley ex rel. U.S. v. Orlando Reg'l Healthcare Sys., Inc.*, 524 F.3d 1229, 1232 (11th Cir. 2008). By contrast, factual attacks "challeng[e] the accuracy of the allegations, not their sufficiency." *Norkunas v. Seahorse NB, LLC*, 720 F. Supp. 2d 1313, 1314 (M.D. Fla. 2010), *aff'd*, 444 F. App'x 412 (11th Cir. 2011).[3] As a result, factual attacks allow a court "to consider extrinsic evidence such as deposition testimony and affidavits" in determining whether the court has subject matter jurisdiction. *Carmichael*, 572 F.3d at 1279.

### B. Mootness

Under Article III of the United States Constitution, federal courts' jurisdiction is limited to cases and controversies. *E.g.*, *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013). "The doctrine of mootness is derived from this limitation because an action that is moot cannot be characterized as an active case or controversy." *Adler v. Duval Cty. Sch. Bd.*, 112 F.3d 1475, 1477 (11th Cir. 1997). Thus, "[w]hen events subsequent to the commencement of a lawsuit create a situation in which the court can no longer give the plaintiff meaningful relief, the case is moot and must be dismissed." *Fla. Ass'n of Rehab. Facilities, Inc. v. State of Fla. Dep't of Health & Rehab. Servs.*, 225 F.3d 1208, 1217 (11th Cir. 2000) (citing

---

[3] "Unpublished opinions are not controlling authority and are persuasive only insofar as their legal analysis warrants." *Bonilla v. Baker Concrete Const., Inc.*, 487 F.3d 1340, 1345 (11th Cir. 2007).

*Jews for Jesus, Inc. v. Hillsborough Cty. Aviation Auth.*, 162 F.3d 627, 629 (11th Cir. 1998)).

However, "[t]he doctrine of voluntary cessation provides an important exception to the general rule that a case is mooted by the end of [a defendant's] offending behavior." *Troiano*, 382 F.3d at 1282. Instead, in most cases, a defendant's "voluntary cessation of the illegal conduct does not deprive the tribunal of power to hear and determine the case, *i.e.*, does not make the case moot." *Id.* at 1283 (quoting *Sec'y of Labor v. Burger King Corp.*, 955 F.2d 681, 684 (11th Cir. 1992)). Absent such an exception, a defendant could temporarily suspend the offending conduct only to resume the conduct after the case is dismissed for its mootness. *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000).

Consequently, courts weighing mootness in voluntary cessation cases apply a "*stringent*" standard: "A case *might* become moot if subsequent events made it *absolutely clear* that the allegedly wrongful behavior *could not reasonably be expected to recur*." *Sheely*, 505 F.3d at 1183–84 (quoting *Friends of the Earth*, 528 U.S. at 189). Courts in this circuit consider the following three factors (the "**Sheely factor(s)**") in making this determination:

> (1) whether the challenged conduct was isolated or unintentional, as opposed to a continuing and deliberate practice; (2) whether the defendant's cessation of the offending conduct was motivated by a genuine change of heart or timed to anticipate suit; and (3) whether, in ceasing the conduct, the defendant has acknowledged liability.

*Id.* at 1184. Further, the "'formidable,' 'heavy burden of persuading the court that the challenged conduct cannot reasonably be expected to start up again lies with the party asserting the mootness.'" *Id.* (quoting *Friends of the Earth*, 528 U.S. at 190).

## III. DISCUSSION

Defendant's Motion presents a factual attack on the Court's subject matter jurisdiction because it "relie[s] on extrinsic evidence and d[oes] not assert lack of subject matter jurisdiction solely on the basis of the pleadings." *See Morrison v. Amway Corp.*, 323 F.3d 920, 924 n.5 (11th Cir. 2003). Instead, Defendant asserts a lack of subject matter jurisdiction based upon its discontinuation of the EV Program, an event that occurred after Plaintiff filed the Complaint. (Docs. 33, 36).

As Plaintiff notes in its Response, although Defendant's mootness argument rests entirely upon its "voluntary discontinuation" of the challenged EV Program, Defendant's Motion fails to mention the doctrine of voluntary cessation. (Doc. 33; *see* Doc. 35, p. 4). Further, while Defendant does address the doctrine of voluntary cessation in its Reply, the Court finds that Defendant nonetheless fails to meet the "formidable" and "heavy" burden of establishing the EV Program claims' mootness here. *See Friends of the Earth*, 528 U.S. at 190; (Doc. 36).

This Court applies the *Sheely* factors to determine the mootness of the relevant claims.[4] 505 F.3d at 1184. Notably, Defendant openly concedes that the

---

4   In its Reply, Defendant initially argues that the Court should utilize the factors set forth in *Purpose Built Families Foundation, Inc. v. United States*, 95 F.4th 1346 (11th Cir. 2024), to determine whether the voluntary cessation exception to mootness applies here. (Doc. 36, p.

7

first and third *Sheely* factors are met here. (Doc. 36, p. 6). As to the first factor, whereby the Court considers "whether the challenged conduct was isolated or unintentional, as opposed to a continuing and deliberate practice," Defendant acknowledges that the EV Program was, in fact, deliberate. *Sheely*, 505 F.3d at 1184; (Doc. 36, pp. 6–7 (conceding this point and explaining that the EV Program "was part of a heavily thought-out initiative intended to benefit Ford's dealerships, the environment, consumers, and the Ford brand.")). As for the third factor, whereby the Court considers "whether, in ceasing the conduct, the defendant has acknowledged liability," Defendant likewise admits that it "certainly has not acknowledged liability in any way." *Sheely*, 505 F.3d at 1184; (Doc. 36, p. 6).

In lieu of these factors, Defendant urges the Court to consider that "Ford's conduct was not malicious nor did Ford intend to harm Plaintiff." (Doc. 36, p. 7). Defendant further emphasizes that Plaintiff's Complaint "acknowledges . . . 'that innovation is good for the industry'" and also "acknowledges that the [EV] Program was at all times voluntary." (*Id.* (quoting Doc. 1, ¶ 74; and then citing Doc. 1, ¶ 39)). The Court cannot find that these considerations render it "absolutely clear" that Defendant will not resume the challenged conduct. *See Sheely*, 505 F.3d at 1183–

---

3). However, *Purpose Built Families* concerned voluntary cessation of the challenged conduct by a government actor—the Department of Veterans Affairs. 95 F.4th at 1349. Importantly, courts apply a more lenient standard when considering such voluntary cessation by a government actor "[b]ecause 'there is a presumption that the government will not later resume the action' . . . ." *Djadju v. Vega*, 32 F.4th 1102, 1108 (11th Cir. 2022) (first quoting *Walker v. City of Calhoun*, 901 F.3d 1245, 1270 (11th Cir. 2018); then citing *Troiano*, 382 F.3d at 1283; and then citing *Coral Springs St. Sys., Inc. v. City of Sunrise*, 371 F.3d 1320, 1328–29 (11th Cir. 2004)). Thus, because Defendant is a private entity, the Court finds that *Sheely* supplies the appropriate factors here. *See* 505 F.3d at 1184.

84 (quoting *Friends of the Earth*, 528 U.S. at 189). Indeed, not only does Defendant continue to dispute its liability as to the EV Program counts, but it impliedly rejects that the conduct caused Plaintiff any harm,[5] and ultimately insists that the motivations behind the conduct were noble. (*See* Doc. 36, pp. 6–7). If anything, through these arguments, Defendant doubles down on the challenged conduct. Thus, Defendant's arguments counsel against a finding that the EV Program claims are moot.

Next, Defendant argues that the second *Sheely* factor—"whether the defendant's cessation of the offending conduct was motivated by a genuine change of heart or timed to anticipate suit"—weighs in Defendant's favor. *Sheely*, 505 F.3d at 1184; (Doc. 36, p. 6). Specifically, Defendant notes that the instant suit had been pending nearly a year before it discontinued the EV Program. (Doc. 36, p. 6). However, Plaintiff highlights that Defendant's first iteration of the instant Motion[6] was filed approximately two weeks after the EV Program was discontinued. (Doc. 35, p. 7). Of note, the *Sheely* court found the second factor weighed against a finding of mootness where the defendant's voluntary change in policy occurred

---

[5] In citing to Plaintiff's Complaint for the notion that the EV Program was technically voluntary, Defendant wholly ignores Plaintiff's additional allegations stating that franchised dealers that "opted out" of the program also bore heavy consequences as a result of so doing, including by losing their ability to sell and service Defendant's EVs until at least 2027. (Doc. 1, ¶¶ 39, 42).

[6] Defendant filed its first motion for partial summary judgment asserting the EV Program claims' mootness on June 28, 2024. (Doc. 26). The Court struck the aforementioned motion, finding Defendant had failed to comply with the Court's requirements for filing such motions as set forth in the Court's Case Management and Scheduling Order (Doc. 19 (the "**CMSO**")). (Doc. 27). However, the Court granted Defendant leave to file an amended motion for partial summary judgment in a manner that complied with the CMSO's requirements. (*Id.*). As a result, Defendant filed the Motion at issue here. (Doc. 33).

nine months after the lawsuit began. 505 F.3d at 1186. The Eleventh Circuit found it significant that the defendant filed its motion for summary judgment asserting the mootness of the plaintiff's claims just two days after the policy change occurred. *Id.* at 1186–87. Consequently, under *Sheely*, the second factor weighs against a finding of mootness here. *See id.*

Finally, Defendant attaches the Declaration of its agent, Michael O'Brien ("**Mr. O'Brien**"), to its Reply. (Doc. 36-1 (the "**Declaration**")).[7] Mr. O'Brien attests that "at this time, Ford has no intention of reestablishing the Model e EV Program that was discontinued as of July 1, 2024." (*Id.* ¶ 6). The Declaration's lukewarm statement regarding Defendant's intentions does not boost Defendant over the high bar required for establishing the mootness of the EV Program claims. First, Mr. O'Brien only confirms Ford's intention not to resume the EV Program "*at this time.*" (*Id.* (emphasis added)). That is to say, Defendant makes no assurances that it will not have a change of heart tomorrow. (*See id.*). Moreover, even if Defendant did definitively profess that it would not resume the challenged conduct, such a "'profession' . . . standing alone, does not suffice to make a case moot." *Sheely*, 505 F.3d at 1186 (quoting *United States v. W.T. Grant Co.*, 345 U.S. 629, 633 (1953)). Considering that all three *Sheely* factors weigh in Plaintiff's favor, Defendant has not proven that it is "*absolutely clear* that the allegedly wrongful

---

[7] In the Declaration, Mr. O'Brien states that from March of 2022 to June of 2023, he served as Defendant's North American Director of Market Representation for the Ford Model e business unit. (Doc. 36-1, ¶ 3). Further, Mr. O'Brien currently serves as the Senior Director of Retail Network and Sales Strategy for Defendant. (*Id.*).

10

behavior *could not reasonably be expected to recur*." *Id.* at 1183–84 (quoting *Friends of the Earth*, 528 U.S. at 189). The Motion is thus due to be denied.

## IV.   CONCLUSION

As a result of the foregoing, it is **ORDERED AND ADJUDGED** that Defendant Ford Motor Company's Amended Motion for Partial Summary Judgment (Doc. 33) is **DENIED**.

**DONE AND ORDERED** in Orlando, Florida on March 3, 2025.

PAUL G. BYRON
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties