**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**SUN STATE FORD, INC.,**

       **Plaintiff,**

**v.**                                  **Case No: 6:23-cv-1728-PGB-LHP**

**FORD MOTOR COMPANY,**

       **Defendant.**

_____/

## <u>ORDER</u>

This cause is before the Court on the Defendant Ford Motor Company's ("**Defendant**") *Daubert* Motion to Exclude Plaintiff Sun State Ford's ("**Plaintiff**") Expert's Opinions. (Doc. 77 (the "***Daubert* Motion**")). The Plaintiff submitted a Response in Opposition (Doc. 92), and Defendant filed a Reply (Doc. 98). Upon consideration, the Defendant's *Daubert* Motion is granted.

## I.    BACKGROUND

Plaintiff initiated this action for monetary, declaratory, and injunctive relief on September 8, 2023. (Doc. 1). Defendant is a manufacturer and distributor of Ford brand vehicles, and Plaintiff is a constituent franchise dealer. (*Id.* ¶ 9). This case arises from Defendant's alleged breach of oral contracts, perpetration of unfair business dealings, and other unlawful practices. (*See generally id.* ¶¶ 75–162).

On August 4, 2025, Defendant filed a *Daubert* Motion seeking to exclude the expert testimony of Joseph Roesner ("**Roesner**"). (Doc. 77). On August 28, 2025, after the close of discovery and in response to Defendant's *Daubert* motion, the Plaintiff updated its initially undisclosed computational damages for lost sales figures to $158,679. (Doc. 94-2). In its response in opposition to the *Daubert* Motion, the Plaintiff attached the Roesner Affidavit, which materially changed the opinions disclosed in Roesner's expert report. (Doc. 92-1). Moreover, Plaintiff's response in opposition to the *Daubert* Motion included an affidavit by Harpul Ohri to bolster the updated and previously undisclosed damages calculation. (Doc. 92-3).

Afterwards, Defendant filed motions to strike, seeking to exclude the revised damages figure for lost sales and the Roesner and Ohri Affidavits. The Court granted the motions to strike. (Doc. 113). Therefore, in resolving Defendant's *Daubert* Motion, the Court is limited to Mr. Roesner's expert report in considering the usefulness of his opinions without Mr. Ohri's damages calculation and the expert's supplemental declaration.

## II.    LEGAL STANDARDS

"[T]he Federal Rules of Evidence 'assign to the trial judge the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand.'" *Ruiz v. SharkNinja Operating LLC*, No. 6:21-cv-1628-WWB-LHP, 2024 WL 640859, at *1 (M.D. Fla. Feb. 6, 2024) (citing *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141 (1999)). The determination of

2

admissibility is "uniquely entrusted to the district court," which is given "considerable leeway in the execution of its duty." *Id.* (quoting *Rink v. Cheminova, Inc.*, 400 F.3d 1286, 1291 (11th Cir. 2005)). And "[t]he burden of laying the proper foundation for the admission of the expert testimony is on the party offering the expert, and admissibility must be shown by a preponderance of the evidence." *Id.* (quoting *Allison v. McGhan Med. Corp.*, 184 F.3d 1300, 1306 (11th Cir. 1999)).

Federal Rule of Evidence 702 permits "[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education" to testify in the form of an opinion. In *Daubert*, the Supreme Court explained that Rule 702 imposes an obligation on a trial court to act as a gatekeeper, ensuring that all scientific testimony or evidence admitted is not only relevant but also reliable. *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993). District courts are charged with this gatekeeping function "to ensure that speculative, unreliable expert testimony does not reach the jury" under the mantle of reliability that accompanies "expert testimony." *McCorvey v. Baxter Healthcare Corp.*, 298 F.3d 1253, 1256 (11th Cir. 2002). Thus, the party offering an expert opinion has the burden of establishing three criteria: qualification, reliability, and helpfulness. *See McClain v. Metabolife Int'l, Inc.*, 401 F.3d 1233, 1238 (11th Cir. 2005).

First, the witness must be "qualified to testify competently regarding the matters [s]he intends to address." *Rink*, 400 F.3d at 1291. Indicia of an expert's qualifications may be evidenced by education, training, work experience, publication in the pertinent field, and membership in professional societies. *See*

3

*Am. Tech. Res. v. United States*, 893 F.2d 651, 656 (3d Cir. 1990). Second, the expert witness must employ "sufficiently reliable" scientific methods or principles to form her opinions. *Rink*, 400 F.3d at 1291. The reliability of an expert's methodology can be evaluated by considering a wide range of factors, including: (1) whether the expert bases her opinion on sufficient facts or data; (2) whether the expert unjustifiably extrapolates her research to reach an unfounded conclusion; (3) whether the expert considers or accounts for contradictory studies or data; (4) the extent to which the methods used rely on the expert's subjective interpretations; and (5) whether the expert is being as careful as an expert in the same field would be in conducting professional work outside the context of paid litigation. *See Daubert*, 509 U.S. at 593–94; FED. R. EVID. 702 advisory committee notes to 2000 amendments.

In forming the basis of his opinion, an expert may rely on "facts or data in the case that the expert has been made aware of or personally observed." FED. R. EVID. 703. To that end, the facts or data on which an expert forms his opinion need not be admissible for his opinion to be admitted as long as these facts and data are of the type that experts in his field normally rely upon in forming an opinion on the subject at hand. *Id*. Moreover, the expert's testimony must "assist the trier of fact to understand the evidence or to determine a fact in issue." *Daubert*, 509 U.S. at 591. Expert testimony helps where it concerns matters beyond the knowledge of the average juror and will allow the jury to understand the evidence or to resolve a factual dispute. *See Kumho Tire*, 526 U.S. at 148–49. Conversely, there is no need

4

for an expert's opinion where the jury can decide a disputed issue through the application of common sense or simple logic, considering the evidence and testimony presented at trial. *See Dhillon v. Crown Controls Corp.*, 269 F.3d 865, 871 (7th Cir. 2001). Further, like all evidence and testimony, an expert's opinion must be relevant to an issue in the case and must have probative value that outweighs the concerns listed in Rule 403. *Daubert*, 509 U.S. at 591.

When an expert relies primarily on experience in forming his opinions, "the witness must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts." *United States v. Augustin*, 661 F.3d 1105, 1125 (11th Cir. 2011). "Expert testimony is admissible which connects conditions existing later to those existing earlier provided the connection is concluded logically." *See Housley v. LiftOne, LLC*, No. 7:20-CV-00010-LSC, 2021 WL 4197596, at *6 (N.D. Ala. Sept. 15, 2021) (quoting *Breidor v. Sears, Roebuck & Co.*, 772 F.2d 1134, 1138 (3d Cir. 1983)). Thus, "[i]f the witness is relying solely or primarily on experience, then the witness must explain how the experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts." *Id.* at *3. "Accordingly, 'the proponent of the testimony does not have the burden of proving that it is scientifically correct, but that by a preponderance of the evidence, it is reliable.'" *Id.* (quoting *Allison*, 184 F.3d at 1312).

That said, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Allison*, 184 F.3d at 1311 (citing *Daubert*, 509 U.S. at 596). This is because the primary focus of a *Daubert* inquiry "is on the principles and methodology underlying expert opinion testimony, not the conclusions they generate." *Daubert*, 509 U.S. at 595.

## III.    DISCUSSION

Mr. Roesner was retained to determine whether the sale of "new retail Ford light and medium truck[s] . . . by Rush Truck" impacted new retail Ford sales of Sun State Ford from October 2019 through 2024. (Doc. 77-1, ¶ 2). Mr. Roesner was told to accept two assumptions in forming his opinions: (1) Sun State Ford was told that Rush Truck would only be serving the commercial truck market and would not be competing for retail sales, and (2) to assume that "as a matter of law," Rush Truck should not have made new retail Ford sales, and such sales should have been made by other licensed Ford dealerships." (*Id.*). Mr. Roesner outlined two primary opinions. First, he opined that during the relevant time, "Sun State's sales of new retail Ford vehicles sold by Rush Truck . . . would have at a minimum been 86 vehicles." (*Id.* ¶ 9). Second, he opined that the percentage of new retail Ford vehicles sold by Rush Truck during the relevant period is inconsistent with a dealership only serving the commercial vehicle market. (*Id.* ¶ 10).

The Defendant argues that Mr. Roesner's lost sales opinion is irrelevant and unhelpful because he did not convert the raw numbers or lost sales into damages.

6

(Doc. 77, p. 2). The Defendant also claims that the opinions are unhelpful and unreliable because Mr. Roesner accepts assumptions from Plaintiff's counsel that contradict the pleaded allegations and the testimony of Plaintiff's main witness and therefore do not align with the facts of the case. (*Id.* at p. 3). Lastly, the Defendant asserts that the Plaintiff's methodology is unreliable, because "some unknown number of what [Roesner] considered to be 'retail' sales could have been commercial sales." (*Id.*).

## A.    Calculation of Damages

In their Rule 26 initial disclosures, the Plaintiff did not provide a computation of damages and explained:

> Plaintiff does not yet have a computation of the damages it is claiming in this action. The information necessary to determine and compute Plaintiff's damages will require discovery and expert opinion. However, Plaintiff anticipates seeking damages for the costs of complying with the Dealer Agreement above what Rush Truck Centers was required to incur while being permitted to sell directly to retail customers; unnecessary costs of complying with the Ford EV Program; and damages for Ford's breaches of the Dealer Agreement and the Heintzelman agreement described in the Complaint, including but not limited to lost sales and other renumeration for not being able to sell in the same manner as other dealers. Plaintiff does not waive, and expressly reserves, its rights to allege all damages, including attorneys' fees and costs, which will become known in the course of discovery in this matter. Plaintiff also reserves all rights to supplement the disclosure of its damages, including the computation of same, in the course of discovery in this matter.

(Doc. 77-4).

The Plaintiff's calculation of damages was not provided until August 28, 2025, after discovery closed on July 31, 2025, and after the Defendant filed its

7

*Daubert* Motion. (Docs. 63, 77, 94-2). Furthermore, Mr. Roesner does not provide an opinion on the damages suffered by the Plaintiff. (Doc. 77-1). Since the Plaintiff failed to disclose its damages calculation until after discovery closed, making such evidence inadmissible, Mr. Roesner's estimate of the sales allegedly lost to Rush Truck is unhelpful. Knowing the number of light-duty and medium-duty trucks sold by Rush Truck that should have been sold by the Plaintiff does not assist the jury in calculating damages. In short, nothing in Mr. Roesner's report addresses the types of damages the Plaintiff identified in its Rule 26 disclosure.

Mr. Roesner admitted during his deposition that, although he was capable of calculating damages, he was not hired to assess economic loss.

> Q. You have not undertaken any analysis as to the dollar value of any damages to Sun State, true?
>
> A. Correct.
>
> Q. You have not been asked to make any calculation of economic damages?
>
> A. Correct.
>
> Q. That is an analysis that Fontana [The Fontana Group, Inc., Roesner's consulting firm] could have done, right?
>
> A. It's an analysis that – we have done economic damages in other cases, yes.
>
> Q. But not in this case?
>
> A. Correct.

(Doc. 77-2, 50:13–24). Accordingly, Mr. Roesner's opinions regarding the number of new retail Ford vehicles sold by Rush Truck during the relevant period are unhelpful to the jury and are inadmissible.[1]

## B.    Assumptions and Methodology

In the absence of admissible evidence of damages, the only relief sought by the Plaintiff that remains available includes injunctive and declaratory relief. (Doc. 1, Counts II, IV, V, VI, VII, VIII, IX, X, XI, XII). Therefore, the Court will consider the remaining arguments made by the Defendant regarding the admissibility of Mr. Roesner's opinions.

The Defendant argues that the "fit" between an expert's opinions and the facts and legal theories must be dependable. (Doc. 77, p. 11). "Expert evidence based on a fictitious set of facts is just as unreliable as evidence based on no research at all." *See Worley v. Carnival Corp.*, No. 21-CIV-23501-MORENO/GOODMAN, 2023 WL 1840154, at *3 (S.D. Fla. Jan. 30, 2023) (quoting *Guillory v. Domtar Indus., Inc.*, 95 F.3d 1320, 1331 (5th Cir. 1996)); *see also Skypoint Advisors, LLC v. 3 Amigos Prods., Inc.*, 585 F. Supp. 3d 1326, 1332 (M.D. Fla. 2022) (finding an expert's damages opinion was "unreliable because he use[d] the wrong measure of damages").

Mr. Roesner was asked by Plaintiff's counsel to assume that Rush Truck would only serve the commercial truck market and would not compete with

---

[1]    The Defendant does not challenge Mr. Roesner's qualifications, which are considerable. (Doc. 77, p. 8). However, his opinion regarding the number of new trucks sold by Rush Truck does not advance any issue before the jury without a damages computation.

Plaintiff for retail sales, and to further assume that, as a matter of law, such retail sales should have been made to other licensed Ford dealerships. (Doc. 77, pp. 6–7). The Defendant argues that the assumptions are contradicted by the facts alleged in the Complaint and the testimony of Plaintiff's co-owner, Mr. Jasvinder Lally. (*Id.* at p. 12). The Plaintiff alleges the following facts regarding Rush Truck's sale of retail vehicles:

> 20.    In or about 2011, Drakesmith sold Heintzelman Trucks to Rush Truck Centers, which continues to own the business today and operates under the name Rush Truck Center ("Rush").
>
> 21.    In the late 1980's, FMC approached Plaintiff (then owned by Kudlip Ohri and Resham Lally) to discuss the possibility of allowing Heintzelman Trucks to sell Ford medium- and light-duty trucks and passenger cars solely to its heavy-duty truck and fleet customers.
>
> 22.    Plaintiff agreed that Heintzelman Trucks could make such sales based on FMC's representation that the sales merely would be *incidental sales* to Heintzelman Trucks' heavy-duty truck and fleet customers and that Heintzelman Trucks would not be a competing Ford dealer, as Heintzelman Trucks was located less than three (3) miles from Sun State Ford.

(Doc. 1, ¶¶ 20–22) (emphasis added).

Mr. Lally, who owns 50 percent of Sun State Ford, testified that Ford permitted Heintzelman (now Rush Truck) to sell 175 cars "primarily to the commercial customers." (Doc. 77-5, 123:10–23). Therefore, Mr. Roesner's assumption that Rush Truck was prohibited from selling any retail vehicles conflicts with the evidence. The question is whether this inconsistency between the assumptions and the facts renders Mr. Roesner's opinion about Rush Truck's retail

sales, and thus those lost by the Plaintiff, inadmissible. The same issue applies to Mr. Roesner's claim that the percentage of new retail Ford vehicles sold by Rush from 2019 to 2024 is inconsistent with a commercial truck seller.[2] The Plaintiff argues that assumptions made by experts relate to the weight and persuasiveness of the opinion, not its admissibility. (Doc. 92, p. 12 (citing *Rosenfield v. Oceania Cruises, Inc.*, 654 F.3d 1190, 1194 (11th Cir. 2011))).

Mr. Roesner's reliance on these assumptions undermines his methodology. That is, Mr. Roesner's method for counting the sales that the Plaintiff "lost" to Rush Truck does not consider that Rush was allowed to make retail sales incidental to their heavy-duty truck and fleet customers. (Doc. 77-2, 65:11–14; 93:25–94:3). This is because he was instructed to assume that Rush Truck was prohibited from making any retail sales. (Doc. 98, p. 4). Mr. Roesner acknowledged that "a dealer could make a commercial vehicle sale that could be reported in [his] data as a retail sale." (Doc. 77-2, 74:17–21). Accordingly, based on the factually flawed assumption presented by Plaintiff's counsel, Mr. Roesner's method for distinguishing between allowed and disallowed retail sales is unreliable.

Mr. Roesner's opinion on lost sales suffers from a similar flaw. He relies on the assumption that retail sales made by Rush Truck should have been made by other licensed Ford dealerships. (Doc. 77-1, ¶ 2). This assumption overlooks the

---

[2]    Mr. Rosener's opinions are relevant to whether Ford breached is purported oral contract with Sun State Ford to limit the ability of Rush Truck to make retail sales. (Doc. 98, p. 2). Even absent evidence of damages, whether the contract was breached is relevant to Plaintiff's injunctive and declaratory judgment claims.

fact that Rush Truck was allowed to make retail sales incidental to its heavy-truck and commercial customers. Additionally, Mr. Roesner does not specify the data or analysis supporting his conclusion that if Rush's retail sales were impermissible, they would have been captured by Plaintiff. (Doc. 98, p. 7). The Defendant correctly notes that Mr. Roesner's affidavit, filed in response to the Defendant's *Daubert* Motion, improperly introduces a new opinion based on historical sales data not discussed in his report, and therefore should be stricken. (*Id.* at 8). Because Mr. Roesner's reliance on assumptions provided by Plaintiff's counsel weakens his methodology for calculating "lost" retail sales and his characterization of Rush Truck as operating inconsistently with commercial sales, these opinions are excluded as unreliable.

## IV. CONCLUSION

For these reasons, the Defendant's *Daubert* Motion to Exclude Mr. Roesner's Opinions (Doc. 77) is **GRANTED.**

**DONE AND ORDERED** in Orlando, Florida on March 27, 2026.

PAUL G. BYRON
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties

12